IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| LISA SALINAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 15-cv-3278 |
| | ) |
| JAMES R. POTTER, and | ) |
| LONDRIGAN, POTTER & | ) |
| RANDLE, P.C., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter has been referred to this Court for a Report and Recommendation on Defendants' FRCP 12(b)(6) Motion to Dismiss (d/e 5) (Motion). Text Order entered January 5, 2016. For the reasons set forth below, this Court recommends that the Motion should be ALLOWED.

### STATEMENT OF FACTS

For purposes of a Rule 12(b)(6) motion to dismiss for failure to state a claim, this Court accepts the well-pleaded allegations in the Complaint (d/e1) as true and views such allegations in the light most favorable to Plaintiff. Independent Trust Corp. v. Stewart Information Services Corp., 665 F.3d 930, 934 (7th Cir. 2012). The Complaint alleges the following.

Randall Loveless (Randall) died on December 28, 1998.  Randall was survived by three children:  Plaintiff Lisa Salinas (Salinas), Lance Loveless (Lance), and Bruce Loveless (Bruce).  Lance was appointed executor of Randall's estate in 1999 (Randall Estate).  Complaint, ¶¶ 9-10.

At the time of his death, Randall owned a 195 acre tract of land in Macoupin County, Illinois (Property).  The Estate operated the Property for some time after Randall's death, but ceased operations by 2007.  Complaint, ¶ 11.

The Property was adjacent to the Monterey Coal Mine (Mine).  The Mine was owned and operated by ExxonMobil USA (ExxonMobil).   In 2006, ExxonMobil offered to purchase the Property from the Randall Estate for $1.3 million.  The offer was never accepted.  Complaint, ¶¶ 12-13.

Lance died on May 7, 2007.  Complaint, Exhibit C, Agreed Order entered August 29, 2007, ¶ 3.  After Lance's death, Salinas and Bruce were appointed co-executors of the Randall Estate.  Salinas and Bruce were also appointed Co-Personal Representatives of their brother Lance's estate (Lance Estate).  Salinas and Bruce were also adjudicated to be Lance's heirs at law, each with a fifty percent interest in the Lance Estate.  Complaint, ¶¶ 14-16.

On November 15, 2007, an Order of Distribution was entered in the Randall Estate.  The real and personal property in the Randall Estate was distributed to Salinas, Bruce and to the Co-Trustees of a Grandchildren's Trust (Grandchildren's Trust) in the following proportions:  32.5 % to Salinas, 32.5% to Bruce, and 35% to the Trust.  Complaint, Exhibit A, Order of Distribution.  The Order of Distribution further directed the Personal Representatives of the Randall Estate to file receipts from the heirs and legatees prior to being discharged.  Id.  Salinas and Bruce executed the deed distributing the real estate, including the Property, and filed it with the probate court on November 16, 2007.  Complaint, Exhibit D, Deed of Co-Personal Representatives.   The Complaint does not allege whether Salinas and Bruce were discharged as Co-Executors or Co-Personal Representatives of the Randall Estate.[1]

In April 2008, Salinas "entered into an attorney-client relationship with Defendant James R. Potter and his law firm of Londrigan, Potter, and Randle, P.C. (Firm) with respect to the underlying matter." Complaint, ¶ 20.  The term "underlying matter" refers to the Randall Estate.  Complaint, ¶ 1.  The Complaint does not allege whether the Defendants

---

[1] The body of the Complaint uses the term "executor" and co-executor," but Exhibits A and D use the term "Personal Representatives" and "Co-Personal Representatives."

represented Salinas personally or in her capacity as a co-executor of the Randall Estate.

Salinas thereafter negotiated with ExxonMobil for the sale of the Property. Due to her efforts, ExxonMobil tendered an offer of $2.3 million for the Property in April 2008 ($2.3 Million Tender). Salinas alleges that the offer "was significantly more than the fair market value of the Property for any other use." Complaint, ¶ 18.

Salinas forwarded a copy of the $2.3 Million Tender to Defendant Potter. Salinas asked Potter to take legal steps necessary to "get the property under contract by way of probate court and/or the other co-administrator." Complaint, ¶ 21.

Bruce personally owned another parcel of land directly adjacent to the Mine (Bruce Parcel). Bruce attempted to sell the Bruce Parcel to ExxonMobil. Bruce "attempted to use his authority over the Property as leverage to increase" ExxonMobil's offer for the Bruce Parcel. When ExxonMobil refused to increase its offer for the Bruce Parcel, Bruce refused to accept $2.3 Million Tender for the Property. Complaint, ¶ 19.

Salinas alleges that the Defendants failed to take any action to secure Bruce's acceptance of the $2.3 Million Tender,

> During this period, Defendants failed to take any action whatsoever to ensure that Bruce Loveless, as a co-executor

> and co-trustee, complied with his fiduciary obligations. However, despite Defendants' knowledge that Bruce Loveless breached his fiduciary obligations with respect to the acceptance of the ExxonMobil tender, Defendants failed to take any action to enforce Loveless' fiduciary obligations.

Complaint, ¶ 22.[2] Salinas also attempted to communicate with Defendants about accepting the $2.3 Million Tender, but Defendants took no action. Salinas alleges that Defendants "failed to communicate with Salinas regarding her directions to them." Complaint, ¶¶ 23-24.

In January 2009, ExxonMobil sold the Mine to Macoupin Energy LLC and withdrew the $2.3 Million Tender. The Illinois Department of Natural Resources (IDNR) assisted ExxonMobil in transferring the operating permits to Macoupin Energy. Complaint, ¶¶ 29, 32.

The Defendants' legal representation of Salinas ended some time before August 22, 2012. Complaint, ¶ 26.

On August 22, 2012, Salinas learned "that Defendant Potter previously, and simultaneously, represented the [IDNR]." Complaint, ¶ 26. In 2013, Salinas secured documents that showed "that Defendants had been appointed by Governor Blagojevich to continuously represent the IDNR." Salinas alleges that, "[I]n 2007 through at least 2009, Defendant Potter and his partner Douglas Quivey were appointed Special Assistant

---

[2] Apparently Bruce was a co-trustee of the Grandchildren's Trust. The Complaint does not identify the co-trustees of the Grandchildren's Trust.

Attorneys General to represent IDNR." Complaint, ¶¶ 27-28. The Complaint includes a Letter of Appointment to Potter and Quivey from Attorney General of State of Illinois Chief of Staff, dated May 22, 2009 (Letter of Appointment), appointing them to represent the IDNR in two consolidated cases entitled Myers v. Brunsvold, 06-3276; and Oliver v. Brunsvold, 06-3281. Complaint, Exhibit E, Letter of Appointment.

Salinas alleges that the Defendants' representation of IDNR was, "an ongoing conflict of interest with respect to IDNR, the IEPA, and the coal mine owned by ExxonMobil, and now owned by Macoupin Energy LLC . . . ." Complaint, ¶ 29-30. Salinas alleges that Defendants never disclosed any actual or potential conflicts of interest during their representation of the Randall Estate. Complaint, ¶ 25.

Based on these factual allegations, Salinas asserts claims of professional negligence against Defendant Potter (Count I) and the Firm (Count II). Salinas alleges that the Defendants breached the standard of care as attorneys in the following ways:

    a. Failing to follow Salinas' objectives, including acceptance of the tender made by ExxonMobil;

    b. Failing to effectively communicate with Salinas with respect to the ExxonMobil tender, pursuant to Rule 1.4 of the Illinois Rules of Professional Conduct;

    c. Failing to enforce the fiduciary obligations owed by Bruce Loveless as a co-trustee and co-executor;

    d. Failing to disclose an actual or potential conflict of interest to Salinas, pursuant to Rule 1.7 of the Illinois Rules of Professional Conduct; and

    e. Otherwise acting in a negligent and careless manner.

Complaint, ¶¶ 37(a)-(e) and 44(a)-(e).  The Defendants now move to dismiss Salinas' claims.

## ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).  The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2) & (d)(1).  While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible on its face if it provides the defendant fair

notice of what the claim is and the grounds upon which it rests. George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).

The Defendants move to dismiss this action based on the statute of limitations. The Illinois statute of limitations for attorney malpractice is two years "from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b). The Defendants do not raise any other grounds for dismissal. The Court, therefore, does not address any other issues regarding the sufficiency of the Complaint.

Salinas originally filed this action in this Court on August 21, 2014. Salinas v. Potter, Case No. 14-3259 (Original Action). Salinas voluntarily dismissed the original complaint on September 25, 2014. Notice of Voluntary Dismissal (Original Action d/e 6). Salinas re-filed this action on September 23, 2015, within a year of the voluntary dismissal. In such situations, the operative date for measuring the statute of limitations under Illinois law is the Original Action filing date of August 21, 2014. 735 ILCS 5/13-217 (1994); see Hudson v. City of Chicago, 228 Ill.2d 462, 468-69, 889 N.E.2d 210, 214 n. 1 (Ill. 2008) (The 1994 version of § 5/13-217 remains in effect; amendments in 1995 were declared unconstitutional in violation of the Illinois Constitution).

The Defendants argue that the cause of action accrued in January 2009, when ExxonMobil withdrew the $2.3 Million Tender.  The Defendants argue that the statute ran two years later in January 2011, long before Salinas filed the Original Action in August 2014.  Salinas argues that statute did not begin to run until August 22, 2012, when she discovered the Defendants' alleged conflict of interest.  She argues that the filing of the Original Action on August 21, 2014, was timely.

Under Illinois law, the two-year statute of limitations for professional negligence is subject to the Illinois discovery rule.  Under the Illinois discovery rule, the statute of limitations starts to run when a party knows or should reasonably know that an injury has occurred and that it was wrongfully caused.  At that point, the party is under an obligation to inquire to determine whether she has an actionable claim.  <u>Khan v. Deutsche Bank, AG</u>, 2012 IL 112219, ¶ 20, 978 N.E.2d 1020, 1028-29 (Ill. 2012). The Illinois Supreme Court explained that, "[T]he term 'wrongfully caused' as used in the discovery rule does not connote knowledge of negligent conduct or knowledge of the existence of a cause of action. That term must be viewed as a general or generic term and not as a term of art." <u>Id.</u>, ¶ 22, 978 N.E.2d at 1029 (citing <u>Knox College v. Celotex Corp.</u>, 88 Ill.2d 407, 416, 430 N.E.2d 976, 981 (Ill. 1981)).  The question of when a party knows

or should reasonably know that an injury has occurred and that it was wrongfully caused is generally an issue of fact.  Khan, 978 N.E.2d at 1029.

In this case, Salinas knew the injury occurred in January 2009.  She knew that the $2.3 Million Tender that she negotiated was above fair market value for any other purpose.  When the $2.3 Million Tender was withdrawn, she knew that she was injured by the loss of the opportunity to sell her interest in the Property at above market price.

The Complaint also indicates that in January 2009 Salinas knew about some of the alleged wrongful conduct that caused her injuries.  She knew that Potter and the Firm failed to follow her objectives of securing the acceptance of the $2.3 Million Tender and failed to enforce Bruce's fiduciary duties as a co-trustee and co-executor to accept the $2.3 Million Tender.  She alleges no facts that would plausibly show that these alleged failings were unknown or hidden from her.  She therefore knew, or reasonably should have known, that the injury was wrongfully caused in January 2009.  Under the allegations in the Complaint, the statute of limitations started to run in January 2009.  Salinas' claims are barred by the Illinois statute of limitations.

Salinas argues that she did not know that the injury was wrongfully caused in August 2012 when she discovered the simultaneous

representation of herself and the IDNR.  That might be true if the alleged conflict of interest was the sole wrongful cause of her injury.  Salinas, however, alleges that other wrongful conduct also caused her injury.  She alleges that Potter and the Firm failed to follow her objectives to secure the acceptance of the $2.3 Million Tender.  She also alleges that Potter and the Firm failed to enforce Bruce's fiduciary duties to accept the $2.3 Million Tender.  These alleged failures were apparent in January 2009.  The later discovery of the alleged conflict of interest did not change her knowledge of the other alleged wrongful conduct.  The statute began to run in January 2009.

    Salinas cites <u>Hoffman v. Orthopedic Systems, Inc.</u>, 327 Ill.App.3d 1004, 765 N.E.2d 116 (Ill. App. 1st Dist. 2002), for the proposition that the discovery rule is triggered when the party "possesses knowledge concerning the injury, **and its cause**, to put a reasonable person in inquiry to determine whether actionable conduct is involved."  <u>Plaintiff's Response to Defendants' Rule 12(b)(6) Motion to Dismiss (d/e 8) (Response)</u>, at 7 (quoting <u>Hoffman</u>, 765 N.E.2d at 122) (emphasis in Response).  The <u>Hoffman</u> court explained the party does not need to know that specific negligent act, only that generally the cause was wrongful.  <u>Id.</u>

In Hoffman, the injured plaintiff initially investigated into whether her injuries were caused by medical malpractice of her doctors and hospital. She later learned that she had a products liability claim against the manufacturer of a surgical platform. The statute of limitations for the products liability claim in Hoffman started to run when the plaintiff initially investigated the possibility of a medical malpractice claim even though she had no idea at the time that she had a products liability claim. The plaintiff in Hoffman had reason to believe that the cause was wrongful. That was enough to start the statute of limitations running under the Illinois discovery rule. Hoffman, 765 N.E.2d at 122.

So it is here. Salinas knew her attorneys had failed her. Potter and the Firm allegedly failed to follow her objectives and failed to enforce Bruce's fiduciary obligations. She alleges no facts to plausibly show that these failings were unknown or hidden. The later discovery of an alleged conflict of interest did not change the fact that Salinas knew or should have known that her injury was wrongfully caused by the Defendants' other alleged failings. Therefore, the two-year statute of limitations started to run in January 2009 under the allegations in the Complaint. She filed the original action more than five years later in August 2014. The claims are barred by the statute of limitations.

THEREFORE, THIS COURT RECOMMENDS that the Defendants' FRCP 12(b)(6) Motion to Dismiss (d/e 5) should be ALLOWED.  The Complaint (d/e 1) should be DISMISSED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely objection will constitute a waiver of objections on appeal.  See <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).  See <u>Local Rule</u> 72.2.

ENTER:  February 8, 2016

*s/ Tom Schanzle-Haskins*
UNITED STATES MAGISTRATE JUDGE